UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASON KARICHKOWSKY,

    Plaintiff,

v.                                                                                     Case No. 8:24-cv-676-CPT

CRAFTY CRAB ST. PETE INC.,
and DONG JIANG,

    Defendants.
_____/

**O R D E R**

Before the Court is the parties' *Joint Amended Motion [ ] to Approve Settlement and Dismiss Case*. (Doc. 73). For the reasons discussed below, the parties' motion is granted.

I.

Plaintiff Jason Karichkowsky initiated this lawsuit in February 2024 against his former employer, Defendant Crafty Crab St. Pete Inc., seeking to recover unpaid overtime wages under the Fair Labor Standards Act (FLSA or the Act), 29 U.S.C. §§ 201–219. (Doc. 1-1). Karichkowsky subsequently amended his complaint on several occasions, including by adding a claim against Crafty Crab's owner, Defendant

Dong Jiang.[1] (Doc. 63). The gist of Karichkowsky's operative complaint is that the Defendants failed to pay him the proper hourly rate for certain overtime hours he worked, improperly utilized tip sharing, and also retaliated against him. *Id.* For relief, Karichkowsky requested both compensatory and liquidated damages, as well as attorney's fees and costs. *Id.* In its answer, Crafty Crab denied Karichkowsky's allegations, raised several affirmative defenses, and asserted multiple counterclaims. (Doc. 66).

In September 2024, the parties elected to resolve their dispute after exchanging discovery. (Docs. 68, 71). Under the terms of the parties' accord, the Defendants agreed to pay Karichkowsky a total of $7,500 in damages, and Karichkowsky promised not to apply for any future employment with the Defendants. (Doc. 73-1). The parties also consented to mutual general releases, to keep their agreement confidential, and to refrain from disparaging each other. *Id.* As for the issue of attorney's fees, the parties stipulated that Karichkowsky's counsel would receive $6,500. *Id*.

By way of the instant motion, the parties now ask that the Court approve their settlement agreement pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). (Doc. 73). The Court conducted a hearing on the matter, during which the parties—through their lawyers—elaborated upon the reasons for their

---

[1] Jiang maintains that he has not been formally served and notes that Karichkowsky has not filed a return of service of process for him.

proposed disposition.[2]  The parties' motion is therefore ripe for the Court's consideration.

## II.

Congress enacted the FLSA to protect employees from the "inequalities in bargaining power between" them and their employers. *Lynn's Food*, 679 F.2d at 1352. To further this purpose, the Supreme Court has placed "limits on the ability of private parties to settle FLSA lawsuits." *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704–05 (1945)).

In an FLSA action brought directly by a current or former employee for unpaid wages, a district court must evaluate the parties' settlement agreement "for fairness" before dismissing the action. *Id.* at 1306 (quoting *Lynn's Food*, 679 F.2d at 1353) (internal quotation marks omitted). Specifically, a district court must assess whether the parties' agreement constitutes a "'fair and reasonable resolution of a bona fide dispute'" under the Act. *Sanchez v. M&F, LLC*, 2020 WL 4671144, at *3 (M.D. Fla. Aug. 12, 2020) (quoting *Lynn's Food*, 679 F.2d at 1354). In rendering this determination, courts within this District often consider the following factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the

---

[2] Although Jiang did not formally sign the settlement agreement, the parties made clear at the hearing that Jiang joined in the proposed resolution.

3

probability of [the] plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.

*Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010) (citation omitted).

If a district court finds that a parties' settlement agreement reflects a fair and reasonable compromise of genuinely contested issues, it may approve the parties' stipulated disposition "to promote the policy of encouraging settlement of litigation." *Lynn's Food*, 679 F.2d at 1354. District courts are ultimately afforded discretion in deciding whether to ratify a parties' proposed resolution of an FLSA action. *Rodrigues v. CNP of Sanctuary, LLC*, 523 F. App'x 628, 629 (11th Cir. 2013) (per curiam) (citation omitted).[3]

In this case, the main *Dees* factors implicated by the parties' agreement are the probability of Karichkowsky's success on the merits and the range of his possible recovery. In the parties' motion, for example, the Defendants explain that they wish to avoid protracted legal proceedings with Karichkowsky, especially given the short time period he was employed by the Defendants. (Doc. 73). For his part, Karichkowsky advises that the settlement figure is fair and reasonable based on his assessment of the evidence.

In light of these representations, it is apparent that due to the expense and risks which would attend further litigation, the parties—with the benefit of their lawyers' advice—have deemed it to be in their respective best interests to bring this case to

---

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

closure based upon their stipulated terms. Taking into account the particular circumstances of this lawsuit, the parties' counseled decision to resolve Karichkowsky's FLSA claims in the manner they propose provides an appropriate basis for affirming their settlement agreement. *See Dees*, 706 F. Supp. 2d at 1241 (finding that an FLSA settlement "'will, almost by definition, be reasonable'" where "'the parties are represented by competent counsel in an adversary context'") (quoting *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009)).

That the parties' agreement includes reciprocal general releases does not alter this conclusion. (Doc. 73-1). A number of courts have approved such non-cash concessions in FLSA settlement agreements where they were negotiated for separate consideration and/or applied to both sides. *See, e.g.*, *Serbonich v. Pacifica Ft. Myers, LLC*, 2018 WL 2440542, at *3–4 (M.D. Fla. May 29, 2018) (observing that "jurists have approved non-cash concessions in FLSA settlement agreements where they have been negotiated for separate consideration or where there is a reciprocal agreement that benefits all parties") (citations omitted), *report and recommendation adopted*, 2018 WL 2451845 (M.D. Fla. May 31, 2018); *Garcia v. B&B Trucking Servs., Inc.*, 2017 WL 3207227, at *2 (M.D. Fla. July 12, 2017) (stating that courts in the Middle District of Florida "have approved FLSA settlement agreements accompanied by separate general releases where there is consideration beyond what is due for the FLSA claims") (citations omitted), *report and recommendation adopted*, 2017 WL 3193668 (M.D. Fla. July 27, 2017); *Caamal v. Shelter Mortg. Co., LLC*, 2013 WL 5421955, at *4 (M.D. Fla. Sept. 26, 2013) (finding an FLSA settlement agreement containing a

general release to be fair and reasonable where independent consideration for the release was given and collecting cases); *Middleton v. Sonic Brands L.L.C.*, 2013 WL 4854767, at *3 (M.D. Fla. Sept. 10, 2013) (authorizing an FLSA settlement agreement that included a general release because the plaintiffs received separate consideration).

Such is the case here. As referenced above, the general release provisions in the parties' settlement agreement are reciprocal. (Doc. 73-1). Further, Karichkowsky—through his counsel—confirmed at the hearing that his general release is supported by consideration separate and apart from the monies he is to receive for his FLSA claims. This separate consideration—as defense counsel highlighted at the November 19 proceeding—includes the Defendants' agreement to dismiss their counterclaims against Karichkowsky. In light of these attestations, Karichkowsky's general release does not undermine the fairness or reasonableness of the parties' accord.

The same can be said of Karichkowsky's promise that he will not apply to work for the Defendants moving forward. *Id.* Such stipulations—often referred to as "no-rehire" clauses—"are different from general releases, in that the plaintiffs, as former employees of the defendants, know exactly what they are relinquishing when they agree not to seek future employment with the defendants." *Rivera v. CO2Meter*, 2018 WL 3213329, at *5 (M.D. Fla. June 14, 2018), *report and recommendation adopted*, 2018 WL 3212455 (M.D. Fla. June 29, 2018). Karichkowsky's attorney explained at the hearing that Karichkowsky has no intention of pursuing another position with the Defendants. Based upon this representation, the parties' no-rehire clause does not invalidate their settlement agreement. *See Owens v. SSRMI, LLC*, 2017 WL 2190646,

6

at *3 (M.D. Fla. Apr. 28, 2017) (noting that courts have approved settlement agreements which include waivers of future employment where such waivers were "inconsequential"), *report and recommendation adopted*, 2017 WL 2172098 (M.D. Fla. May 17, 2017); *Cruz v. Winter Garden Realty, LLC*, 2013 WL 4774617, at *3 (M.D. Fla. Sept. 4, 2013) (finding the waiver of the right to future employment to be fair where the plaintiff disclaimed any desire to seek re-employment with the defendant) (citation omitted).

The parties' mutual confidentiality provision, in which they generally agree not to disclose the terms of their resolution (Doc. 73-1), likewise does not render their agreement infirm.  In arriving at this conclusion, the Court recognizes that there is case authority that these types of clauses "operat[e] unequally to the benefit of the employer" and frustrate the goals of the FLSA "by 'thwart[ing] the public's independent interest in assuring that employees' wages are fair.'" *Crabtree v. Volkert, Inc.*, 2013 WL 593500, at *4 (S.D. Ala. Feb. 14, 2013) (quoting *Hogan v. Allstate Beverage Co.*, 821 F. Supp. 2d 1274, 1283 (M.D. Ala. 2011) and citing *Dees*, 706 F. Supp. 2d at 1242); *see also Fox v. Servs., Supports & Sols., Inc.*, 2018 WL 7361008, at *2 (M.D. Fla. Dec. 12, 2018) (observing that confidentiality provisions "contravene the legislative purpose of the FLSA"); *Gillard v. Fleetmatics USA, LLC*, 2016 WL 6997167, at *1 (M.D. Fla. Sept. 20, 2016) (same).

That said, few, if any, of the courts which have addressed such provisions have found them "to be 'per se unenforceable and violative of public policy.'" *Seda v. All Fla. Appliance & AC, Inc.*, 2015 WL 3652833, at *2 n.2 (M.D. Fla. June 15, 2015)

(quoting *Crabtree*, 2013 WL 593500, at *4).  Indeed, courts in this District often approve FLSA settlement agreements notwithstanding the presence of confidentiality clauses where the agreement is already a matter of public record.  *See, e.g.*, *id.*; *Miller v. Colonial Grocers, Inc.*, 2015 WL 690615, at *2 n.2 (M.D. Fla. Feb. 18, 2015).  For its part, the Eleventh Circuit has declined to issue a categorical opinion on the issue, noting only that district courts have discretion in approving FLSA settlements. *Rodrigues,* 523 F. App'x at 629.

In this case, the Court finds that the parties' confidentiality provision does not negate the fairness or reasonableness of their settlement agreement.  This action and the agreement itself can be found on the public docket, thereby diminishing, if not eliminating altogether, the clause's utility and enforceability.  *See Housen v. Econosweep & Maint. Servs., Inc.*, 2013 WL 2455958, at *2 (M.D. Fla. June 6, 2013) (recognizing that confidentiality provisions are unenforceable when the settlement agreement is filed on the public docket and citing authority)*; DeGraff v. SMA Behavioral Health Servs., Inc.*, 945 F. Supp. 2d 1324, 1330 (M.D. Fla. 2013) (observing that a confidentiality clause is, at least in part, unenforceable due to the public filing of the agreement); *Poulin v. Gen. Dynamics Shared Res., Inc.*, 2010 WL 1813497, at *2 (W.D. Va. May 5, 2010) (stating that "the confidentiality provisions are likely unenforceable in light of the public filing of the [s]ettlement [a]greement").

Turning to the matter of attorney's fees, the FLSA requires the Court to review the reasonableness of the parties' proposed fee figure to ensure "both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged

employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam).  Here, Karichkowsky's counsel confirmed at the hearing that the agreed-upon fee sum was negotiated separately from and without regard to the settlement amount payable to Karichkowsky for his claims.  Karichkowsky's lawyer also represented that this fee figure was substantially less than what he could have obtained under the lodestar method.  These attestations are sufficient.  *See Clarke v. Alta Res. Corp.*, 2017 WL 4958771, at *4 (M.D. Fla. Oct. 30, 2017) (finding that the attorney's fees in an FLSA settlement were fair and reasonable where they were negotiated separately from and had no impact on the settlement amount and were less than the lodestar figure); *Bonetti*, 715 F. Supp. 2d at 1228 (providing that reasonableness may be demonstrated by the parties' representation that they agreed to the fee amount separately and without regard to the sum paid to settle the plaintiff's FLSA claim).

### III.

For the reasons set forth above, it is hereby ORDERED:

1.  The parties' motion (Doc. 73) is granted, and their settlement agreement (Doc. 73-1) is approved.

2.  The action is dismissed with prejudice, and the Clerk of Court is directed to close the case.

9

SO ORDERED in Tampa, Florida this 9th day of December 2024.

_____
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record